# PACE *v.* DiGUGLIELMO, SUPERINTENDENT, STATE CORRECTIONAL INSTITUTION AT GRATERFORD, ET AL.

No. 03–9627.   Argued February 28, 2005—Decided April 27, 2005

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-
NOR, SCALIA, KENNEDY, and THOMAS, JJ., joined. STEVENS, J., filed a
dissenting opinion, in which SOUTER, GINSBURG, and BREYER, JJ., joined,
*post*, p. 419.

*David W. Wycoff* argued the cause for petitioner. With
him on the briefs were *Billy H. Nolas* and *Maureen Kear-
ney Rowley.*

*Ronald Eisenberg* argued the cause for respondents.
With him on the brief were *Thomas W. Dolgenos, John W.
Goldsborough, Arnold H. Gordon,* and *Lynne Abraham.**

---

*\*Peter Goldberger, David Richman, Joseph Farber,* and *David M. Por-
ter* filed a brief for the National Association of Criminal Defense Lawyers
et al. as *amici curiae* urging reversal.

A brief of *amici curiae* urging affirmance was filed for the State of
Alabama et al. by *Troy King,* Attorney General of Alabama, and *Stephanie
N. Morman,* Deputy Solicitor General, by *John W. Suthers,* Interim Attor-
ney General of Colorado, and *Christopher L. Morano,* Chief State's Attor-
ney of Connecticut, and by the Attorneys General for their respective
States as follows: *Mike Beebe* of Arkansas, *M. Jane Brady* of Delaware,
*Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Lawrence G.
Wasden* of Idaho, *Lisa Madigan* of Illinois, *Steve Carter* of Indiana,
*Thomas J. Miller* of Iowa, *Phill Kline* of Kansas, *G. Steven Rowe* of Maine,
*J. Joseph Curran, Jr.,* of Maryland, *Michael A. Cox* of Michigan, *Jeremiah
W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Jim Petro* of Ohio,

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The federal Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a 1-year statute of limitations for filing a federal habeas corpus petition. 28 U. S. C. § 2244(d)(1). That limitations period is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2). This case requires us to decide whether a state postconviction petition rejected by the state court as untimely nonetheless is "properly filed" within the meaning of § 2244(d)(2). We conclude that it is not, and hold that petitioner John Pace's federal petition is time barred.

In February 1986, petitioner pleaded guilty to second-degree murder and possession of an instrument of crime in a Pennsylvania state court. He was sentenced to life in prison without the possibility of parole. Petitioner did not file a motion to withdraw his guilty plea, and he did not file a direct appeal. In August 1986, he filed a petition under the Pennsylvania Post Conviction Hearing Act (PCHA), 42 Pa. Cons. Stat. § 9541 *et seq.* (1988) (amended and renamed by Act No. 1988–47, §§ 3, 6, 1988 Pa. Laws pp. 337–342). These proceedings concluded in September 1992, when the Pennsylvania Supreme Court denied petitioner's untimely request for discretionary review.

Over four years later, on November 27, 1996, petitioner filed another state postconviction petition, this time under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq.* (1998). The PCRA had replaced the PCHA in 1988 and was amended in 1995 to include, for the first time, a statute of limitations for state postconviction

*W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Thomas W. Corbett, Jr.,* of Pennsylvania, *Paul G. Summers* of Tennessee, *Greg Abbott* of Texas, *Jerry W. Kilgore* of Virginia, *Rob McKenna* of Washington, and *Patrick J. Crank* of Wyoming.

petitions, with three exceptions.[1]  Although petitioner's PCRA petition was filed after the date upon which the new time limits became effective, the petition said nothing about timeliness.

After reviewing petitioner's PCRA petition, appointed counsel submitted a "no-merit" letter.  On July 23, 1997, the Court of Common Pleas dismissed the petition, without calling for a response from the Commonwealth.  The court noted that petitioner's claims previously had been litigated and were meritless.  Petitioner appealed.  On May 6, 1998, the Commonwealth filed a brief in response, asserting that petitioner's PCRA petition was untimely under the PCRA's time bar, § 9545(b), and citing as support *Commonwealth* v. *Alcorn*, 703 A. 2d 1054 (Pa. Super. 1997).  On May 28, 1998, petitioner responded by arguing that the time limit was inapplicable to him.  The Superior Court dismissed his petition as untimely on December 3, 1998.  The Superior Court reasoned that petitioner's PCRA petition did not come within the statutory note following § 9545(b), see *ibid.*, and that petitioner had "neither alleged nor proven" that he fell within any statutory exception, see §§ 9545(b)(1)(i)–(iii). App. 316–317.  The Pennsylvania Supreme Court denied review on July 29, 1999.  *Id.*, at 372.

On December 24, 1999, petitioner filed a federal habeas petition under 28 U. S. C. § 2254 in the District Court for the

---

[1] The amended statute states that "[a]ny" postconviction petition, "including a second or subsequent petition, shall be filed within one year" from the date the petitioner's conviction becomes final.  42 Pa. Cons. Stat. § 9545(b)(1) (1998).  However, three exceptions are provided: if governmental interference prevented filing; if a new constitutional rule is made retroactive; or if new facts arise that could not have been discovered through due diligence.  §§ 9545(b)(1)(i)–(iii).  A statutory note provides that the 1995 amendments "shall apply to petitions filed after [January 16, 1996]; however, a petitioner whose judgment has become final on or before [January 16, 1996] shall be deemed to have filed a timely petition . . . if the petitioner's first petition is filed within one year of [January 16, 1996]." Statutory Note on § 9545(b).

Eastern District of Pennsylvania. The Magistrate Judge recommended dismissal of the petition under AEDPA's statute of limitations, § 2244(d)(1), but the District Court rejected that recommendation, App. 447–466 (June 7, 2001, memorandum and order), 503–533 (Mar. 29, 2002, memorandum and order). The District Court recognized that, without tolling, petitioner's petition was time barred.[2] But it held that petitioner was entitled to both statutory and equitable tolling for the time during which his PCRA petition was pending—November 27, 1996 to July 29, 1999. Beginning with statutory tolling, the District Court held that, even though the state court rejected his PCRA petition as untimely, that did not prevent the petition from being "properly filed" within the meaning of § 2244(d)(2). It reasoned that because the PCRA set up judicially reviewable exceptions to the time limit, the PCRA time limit was not a "condition to filing" but a "condition to obtaining relief" as we described those distinct concepts in *Artuz* v. *Bennett,* 531 U. S. 4, 11 (2000). The District Court alternatively found extraordinary circumstances justifying equitable tolling.

The Court of Appeals for the Third Circuit reversed. *Pace* v. *Vaughn,* 71 Fed. Appx. 127 (2003) (not precedential). With regard to *statutory* tolling, it relied on a line of Third Circuit cases to conclude that the PCRA time limit constitutes a "condition to filing" and that, when a state court deems a petition untimely, it is not "properly filed." *Id.,* at 128. With regard to *equitable* tolling, it held that there were not extraordinary circumstances justifying that remedy. *Id.,* at 129. Because Circuits have divided over whether a state postconviction petition that the state court

---

[2] The District Court noted that, under Third Circuit precedent, "petitioners whose convictions became final before the enactment of AEDPA's statute of limitations on April 24, 1996 have until one year from the enactment of the habeas statute of limitations to file their petitions." App. 453, 503. Without tolling, therefore, petitioner's federal habeas petition was filed well after the April 1997 deadline.

has rejected as untimely nonetheless may be "properly filed," we granted certiorari.[3]  542 U. S. 965 (2004).  We now affirm.

In *Artuz* v. *Bennett, supra,* we held that time limits on postconviction petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed." *Id.,* at 8, 11 ("[A]n application is *'properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" including "time limits upon its delivery").  However, we reserved the question we face here: "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed."  *Id.,* at 8, n. 2. Having now considered the question, we see no grounds for treating the two differently.

As in *Artuz,* we are guided by the "common usage" and "commo[n] underst[anding]" of the phrase "properly filed." *Id.,* at 8, 9.  In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception.  The purpose of AEDPA's statute of limitations confirms this commonsense reading.  On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions.  This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Carey* v. *Saffold,* 536 U. S. 214 (2002), points to the same conclusion.  In *Saffold,* we considered whether § 2244(d)(2) required tolling during the 4½ months between the California appellate court's denial of Saffold's postconviction petition and his further petition in the California Supreme Court.  The California Supreme Court denied the petition "on the merits and for lack of diligence," which raised the

---

[3] Compare, *e. g., Dictado* v. *Ducharme,* 244 F. 3d 724, 726–728 (CA9 2001), with *Merritt* v. *Blaine,* 326 F. 3d 157, 162–168 (CA3 2003).

question whether that court had dismissed for lack of merit, for untimeliness, or for both. *Id.*, at 225 (internal quotation marks omitted). Although we ultimately remanded, we explained that, "[i]f the California Supreme Court had clearly ruled that Saffold's 4½-month delay was 'unreasonable,'" *i. e.*, untimely, *"that would be the end of the matter*, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits." *Id.*, at 226 (emphasis added); see also *id.*, at 236 (KENNEDY, J., dissenting) ("If the California court held that all of [Saffold's] state habeas petitions were years overdue, then they were not 'properly filed' at all, and there would be no tolling of the federal limitations period"). What we intimated in *Saffold* we now hold: When a postconviction petition is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2).

Petitioner makes three principal arguments against this reading. First, he asserts that "condition[s] to filing" are merely those conditions necessary to get a clerk to accept the petition, as opposed to conditions that require some *judicial* consideration. Respondent David DiGuglielmo (hereinafter respondent) characterizes petitioner's position, which the dissent also appears to embrace, see *post*, at 426, as a juridical game of "hot potato," in which a petition will be "properly filed" so long as a petitioner is able to hand it to the clerk without the clerk tossing it back. Brief for Respondent 16. Be that as it may, petitioner's theory is inconsistent with *Artuz*, where we explained that jurisdictional matters and fee payments, both of which often necessitate judicial scrutiny, are "condition[s] to filing."[4] See 531 U. S., at 9. We

---

[4] With regard to jurisdiction, see, *e. g.*, *Commonwealth* v. *Judge*, 568 Pa. 377, 387–389, 797 A. 2d 250, 257 (2002) (Pennsylvania court had jurisdiction over PCRA petition, despite the fact the petitioner was not in Pennsylvania custody). With regard to filing fees, see, *e. g.*, Pa. Rule Crim. Proc. 904(F) (2005) ("When a defendant satisfies the judge that the defendant is unable to pay the costs of the post-conviction collateral proceedings, the

fail to see how timeliness is any less a "filing" requirement than the mechanical rules that are enforceable by clerks, if such rules exist.[5] For example, Pennsylvania Rule of Criminal Procedure 901 (2005), which is entitled "Initiation of Post-Conviction Collateral Proceedings," lists two mandatory conditions: (A) the petition "shall" be filed within the time limit, and (B) the proceedings "shall be initiated by filing" a verified petition and "3 copies with the clerk of the court in which the defendant was convicted and sentenced." The natural reading is that (A) is every bit as much of a "condition to filing" as (B).

Petitioner also argues that, because § 2244(d)(2) refers to a "properly filed *application*," then any condition that must be applied on a claim-by-claim basis, such as Pennsylvania's time limit, cannot be a "condition to filing." (Emphasis added.) Section 2244, however, refutes this position. Section 2244(b)(3)(C), for example, states that the court of ap-

---

judge shall order that the defendant be permitted to proceed *in forma pauperis*").

[5] Perhaps not unintentionally, petitioner fails to provide us any guidance on exactly which Pennsylvania Rules are subject to a clerk's striking for noncompliance. We doubt there are many such rules, both because few truly mechanical rules exist and because the role of the clerk in refusing petitions in most courts is quite limited. See, *e. g.*, Fed. Rule Civ. Proc. 5(e) ("The clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices"); 28 U. S. C. § 2254 Rule 3(b) (2000 ed., Supp. IV) ("The clerk must file the petition and enter it on the docket"); see also Advisory Committee's Note on Habeas Corpus Rule 3(b), 28 U. S. C., p. 42 (2000 ed., Supp. IV) ("Rule 3(b) requires the clerk to file a petition, even though it may otherwise fail to comply with Rule 2. This rule . . . is not limited to those instances where the petition is defective only in form; the clerk would also be required, for example, to file the petition even though it lacked the requisite filing fee or an *in forma pauperis* form"). Indeed, not even filing in the right court would be a "condition to filing" under petitioner's limited theory. See 42 Pa. Cons. Stat. § 5103(a) (2004) (instructing that, when a petition is filed in the wrong court, it is not to be stricken but transferred to the proper court). Under this theory, "filing" conditions may be an empty set.

peals "may authorize the filing of a second or successive *application* only if it determines that the *application* makes a prima facie showing that the *application* satisfies the requirements of this subsection." (Emphases added.) Yet the "requirements" of the subsection are not applicable to the application as a whole; instead, they require inquiry into specific "claim[s]." See § 2244(b)(2)(A) ("claim" relies on a new rule made retroactive); § 2244(b)(2)(B) ("claim" with new factual predicate).[6] In fact, petitioner's argument is inconsistent with § 2244(d)(2) itself, which refers not just to a "properly filed application," but to a "properly filed application . . . *with respect to the pertinent judgment or claim.*" (Emphasis added.)

Finally, petitioner challenges the fairness of our interpretation. He claims that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus that his federal habeas petition is time barred. Brief for Petitioner 30. A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. See *Rhines* v. *Weber, ante,* at 278. A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. *Ibid.* ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in in-

---

[6] Similarly, § 2244(d)(1) provides that a "1-year period of limitation shall apply to an *application* for a writ of habeas corpus." (Emphasis added.) The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).

tentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

The dissent suggests that our conclusion in *Artuz*, that state procedural bars "prescrib[ing] a rule of decision for a court" confronted with certain claims previously adjudicated or not properly presented are not "filing" conditions, requires the conclusion that the time limit at issue here also is not a "filing" condition. *Post*, at 425–426; see *Artuz* v. *Bennett*, 531 U. S., at 10–11 (discussing N. Y. Crim. Proc. Law §§ 440.10(2)(a) and (c) (McKinney 1994)). The dissent ignores the fact that *Artuz* itself distinguished between time limits and procedural bars. 531 U. S., at 8–10. For purposes of determining what are "filing" conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of "rule of decision" procedural bars at issue in *Artuz*, which go to the ability to obtain relief.[7] Far from requiring "verbal gymnastics," it must be the case that a petition that cannot even be initiated or considered due to the failure to include a timely claim is not "properly filed." *Id.*, at 10.

For these reasons, we hold that time limits, no matter their form, are "filing" conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not "properly filed," and he is not entitled to statutory tolling under § 2244(d)(2).

---

[7] Compare, *e. g.*, Pa. Rule Crim. Proc. 901(A) (2005) (titled "Initiation of Post-Conviction Collateral Proceedings" and listing compliance with the time limit as one mandatory condition); 42 Pa. Cons. Stat. § 9545(b) (2002) (titled "Jurisdiction and proceedings" and listing the time limit); *Commonwealth* v. *Fahy*, 558 Pa. 313, 328, 737 A. 2d 214, 222 (1999) (describing the time limit as "jurisdictional"); 2 Ala. Rule Crim. Proc. 32.2(c) (2004–2005) (stating that a court "shall not entertain" a time-barred petition), with 42 Pa. Cons. Stat. § 9543(a) (2002) (titled "Eligibility for relief" and listing procedural bars, like those at issue in *Artuz*); 2 Ala. Rule Crim. Proc. 32.2(a) (2004–2005) (stating that a "petitioner will not be given relief" if certain procedural bars, like those at issue in *Artuz*, are present).

We now turn to petitioner's argument that he is entitled to *equitable* tolling for the time during which his untimely PCRA petition was pending in the state courts.[8]  Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  See, *e. g., Irwin* v. *Department of Veterans Affairs,* 498 U. S. 89, 96 (1990).  Petitioner argues that he has satisfied the extraordinary circumstance test.  He reasons that Third Circuit law at the time he sought relief required him to exhaust his state remedies and thus seek PCRA relief, even if it was unlikely the state court would reach the merits of his claims, and that state law made it appear as though he might gain relief, despite the petition's untimeliness.  Thus, he claims, "state law and Third Circuit exhaustion law created a trap" on which he detrimentally relied as his federal time limit slipped away.  Brief for Petitioner 34.  Even if we were to accept petitioner's theory, he would not be entitled to relief because he has not established the requisite diligence.

Petitioner's PCRA petition set forth three claims: that his sentence was "illegal"; that his plea was invalid because he did not understand his life sentence was without the possibility of parole; and that he received ineffective assistance of counsel at "all levels of representation."  App. 202, 220.  The first two of these claims were available to petitioner as early as 1986.  Indeed, petitioner asserted a version of his invalid plea claim in his August 21, 1986, PCHA petition.  See *id.,* at 144.  The third claim—ineffective assistance of

---

[8] We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations.  Cf. *Pliler* v. *Ford,* 542 U. S. 225 (2004).  Because respondent assumes that equitable tolling applies and because petitioner is not entitled to equitable tolling under any standard, we assume without deciding its application for purposes of this case.

counsel—related only to events occurring in or before 1991. See *id.*, at 191.

. Yet petitioner waited years, without any valid justification, to assert these claims in his November 27, 1996, PCRA petition.[9] Had petitioner advanced his claims within a reasonable time of their availability, he would not now be facing any time problem, state or federal.[10] And not only did petitioner sit on his rights for years *before* he filed his PCRA petition, but he also sat on them for five more months *after* his PCRA proceedings became final before deciding to seek relief in federal court. See *id.*, at 372, 373. Under long-established principles, petitioner's lack of diligence precludes equity's operation. See *Irwin* v. *Department of Veterans Affairs, supra,* at 96; *McQuiddy* v. *Ware,* 20 Wall. 14, 19 (1874) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights").

Because petitioner filed his federal habeas petition beyond the deadline, and because he was not entitled to statutory or equitable tolling for any of that period, his federal petition is barred by the statute of limitations. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), prisoners in state custody have a 1-year

---

[9] Petitioner's PCRA petition did cite allegedly "new" evidence to support his claims that he received ineffective assistance of counsel and that his plea was invalid because he did not understand his life sentence was without the possibility of parole. However, this new evidence was not new at all: It consisted of affidavits from petitioner's parents and brother regarding a meeting they attended with petitioner's counsel and petitioner in 1985 or 1986. App. 195–199.

[10] As noted previously, the PCRA time limit only came into effect in January 1996, see n. 1, *supra,* and petitioner's federal habeas petition was due in April 1997, see n. 2, *supra.*

window in which they may file a federal habeas corpus petition. 28 U. S. C. § 2244(d)(1). The statute provides, however, for tolling of the statute of limitations during the pendency of any "properly filed application for State postconviction or other collateral review." § 2244(d)(2). Under the interpretation of that statutory provision adopted by the Court today, a petition for state postconviction relief does not constitute a "properly filed application for . . . collateral review," even if the application has been accepted, filed, and reviewed in full by the state court. The Court's chosen rule means that a state application will not be deemed properly filed—no matter how long the state court has held the petition, how carefully it has reviewed the merits of the petition's claims, or how it has justified its decision—if the court ultimately determines that particular claims contained in the application fail to comply with the applicable state statute of limitations. The Court's interpretation of § 2244(d)(2) is not compelled by the text of that provision and will most assuredly frustrate its purpose.[1]

## I

The words "properly filed application for . . . collateral review" are not defined in AEDPA. We did, however, interpret those words in *Artuz* v. *Bennett,* 531 U. S. 4 (2000), by considering their ordinary meaning in the context of the statutory scheme in which they appear. This Court has long understood that a "paper is filed when it is delivered to the proper official and by him received and filed." *United States* v. *Lombardo,* 241 U. S. 73, 76 (1916). In *Artuz,* we expanded upon that understanding, explaining that an "application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an

---

[1] Because I would hold that Pace was entitled to statutory tolling, I need not answer the question whether the Court of Appeals erred by reversing the District Court's decision to grant Pace equitable tolling.

application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." 531 U. S., at 8 (citations omitted). Because applications and claims are distinct, we held that a petitioner's *application* for postconviction review is "properly filed" even when his legal *claims* are procedurally barred under state law.

*Artuz* left open the question presented here—whether a state statute of limitations that allows certain categories of petitioners to file otherwise late applications is comparable to a general precondition to filing (such as the payment of a filing fee) or is instead more akin to a procedural bar that prevents a court from considering particular claims. *Id.*, at 8–9, n. 2. If the state time bar at issue here is more like the former, Pace's failure to comply with it would make his application improperly filed under AEDPA. If, however, the state time bar is more like the procedural bar in *Artuz*, Pace's failure to comply with it would not change the fact that his application was "properly filed." Before answering that question, it is useful to explain why the state court ultimately found Pace's application to be untimely.

## II

Pace filed the application in question—his second request for state postconviction review—*pro se* on November 27, 1996, under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq.* (1998).[2] Pace's

---

[2] Pace's conviction became final in 1986, long before the Pennsylvania Legislature adopted the PCRA's current statute of limitations. Pace's original petition for postconviction relief was filed under the Pennsylvania Post Conviction Hearing Act, 42 Pa. Cons. Stat. § 9541 *et seq.* (1988) (amended and renamed by Act No. 1988–47, §§ 3, 6, 1988 Pa. Laws pp. 337–342), which did not include a statute of limitations. The Pennsylvania Supreme Court denied Pace's request for review on September 3, 1992. The PCRA time bar did not become effective until January 16, 1996. See Act No. 1995–32, § 9579, 1995 Pa. Laws pp. 1125–1126 (Spec. Sess. 1).

PCRA petition raised two claims that he alleged had not been presented during his first round of postconviction review: first, that his life-without-parole sentence was unconstitutional under state and federal law; and second, that his guilty plea colloquy violated due process. Pace provided new evidence that he had not presented during his first round of postconviction review, see App. 191, 195–201, and explained to the court that his two new claims should not be procedurally barred because they had not been "fully litigated or waived" under state law, *id.*, at 191. Pace's justifications for raising these two new claims make plain that he was attempting to fit his application within the commonly recognized judicial exceptions to Pennsylvania's then-applicable state procedural bars.[3]

At the time Pace filed his PCRA petition, no Pennsylvania court had yet applied the PCRA statute of limitations to a petitioner whose conviction had become final prior to the effective date of the Act.[4] Nor had the time in which Pace had a right to file a federal habeas petition expired. Under

---

[3] For instance, Pace argued that his failure to raise the claims below should be excused because of ineffective assistance of counsel. See App. 191–194, 220–226. Pace also argued that a failure to consider the new claim would constitute a "miscarriage of justice," *id.*, at 192, 217–219, and that his new claims challenged the legality of his sentence, *id.*, at 189, 192. To support each of these arguments, Pace cited state cases demonstrating the existence of judicial exceptions to procedural default.

[4] That time bar provides that "[a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: (i) the failure to *raise the claim* previously was the result of interference by government officials with the presentation of the claim . . . ; (ii) the facts upon which *the claim* is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa. Cons. Stat. § 9545(b) (1998) (emphasis added).

AEDPA, Pace had until April 24, 1997, to file a federal habeas petition. See *Carey* v. *Saffold,* 536 U. S. 214, 217 (2002) (1-year limitations period runs from April 24, 1996, for any prisoner whose conviction became final prior to the effective date of the Act). Pace could not, however, obtain relief in a federal court without first exhausting his state remedies. 28 U. S. C. § 2254(b)(1)(A). Thus, as far as Pace knew on November 27, 1996, there was no state or federal statute of limitations that precluded him from obtaining relief, but he was required (1) by AEDPA to go to state court and (2) by state law to demonstrate that his claim was not procedurally barred. Unless Pace's PCRA petition tolled the federal statute of limitations, his claims would be time barred in federal court on April 24, 1997.

Pace's petition was docketed and the court appointed counsel. On July 23, 1997, the state trial court denied relief on the merits. Pace appealed. In May 1998, well after Pace's time to file a federal habeas petition had expired, the Commonwealth filed a brief in the state appellate court, which argued *for the first time* that Pace's petition was untimely under the PCRA's statute of limitations. On December 3, 1998, the state appellate court agreed, explaining that none of Pace's several claims fell within the three statutory exceptions to untimeliness contained in 42 Pa. Cons. Stat. § 9545(b) (1998). The state appellate court's conclusion became final on July 29, 1999. It is that determination that provides the basis for this Court's ruling that, as a matter of federal law, the pleading that generated protracted litigation in the state courts was never "properly filed" in the first place.

III

In *Artuz* v. *Bennett,* 531 U. S. 4 (2000), we held that an application for state postconviction review may be considered "properly filed" within the meaning of 28 U. S. C. § 2244(d)(2) even if the application fails to comply with state-law procedural requirements that preclude relief on the mer-

its of the applicant's claims. 531 U. S., at 8. To construe "'properly filed application' to mean 'application raising claims that are not mandatorily procedurally barred,' [would elide] the difference between an 'application' and a 'claim.' Only individual *claims*, and not the application containing those claims, can be procedurally defaulted under state law . . . ." *Id.*, at 9. Furthermore:

> "Ignoring this distinction would require judges to engage in verbal gymnastics when an application contains some claims that are procedurally barred and some that are not. Presumably a court would have to say that the application is 'properly filed' *as to* the nonbarred claims, and not 'properly filed' *as to* the rest. The statute, however, . . . does not contain the peculiar suggestion that a single application can be both 'properly filed' and not 'properly filed.' Ordinary English would refer to certain *claims* as having been properly *presented* or *raised,* irrespective of whether the application containing those claims was properly filed." *Id.*, at 10.

The same reasoning applies with equal force to the PCRA time bar, which in effect operates in the same manner as the procedural bar in *Artuz.* Under the PCRA, the state court must determine not whether the entire application is time barred, but rather whether individual *claims* are time barred given the various exceptions enumerated in § 9545(b). See n. 3, *supra.* Imagine, for example, a Pennsylvania petitioner who states two claims in what is his second state habeas petition. The first claim asserts a violation of due process rights under *Brady* v. *Maryland,* 373 U. S. 83 (1963), in which the petitioner demonstrates that his failure to raise the claim during his first round of state postconviction review was "the result of interference by government officials with the presentation of the claim" under 42 Pa. Cons. Stat. § 9545(b)(1)(i) (1998). The second claim asserts an ineffective-assistance-of-counsel claim based on the same evi-

dence raised in the petitioner's first PCRA application. Under the rule announced by the Court today, a federal court would be forced to conclude that the petitioner's first claim was a "properly filed application for . . . collateral review" for AEDPA purposes, while his second claim was improperly filed. This is precisely the type of incoherent result that *Artuz* sought to avoid.

Incoherent results will not be limited to petitions filed in Pennsylvania. Many States provide exceptions from their postconviction statutes of limitations that apply to applicants' individual claims. See, *e. g.,* Alaska Stat. § 12.72.020 (Lexis 2004) (exempting from the statute of limitations, *inter alia,* any *claims* "based on newly discovered evidence"); Fla. Rule Crim. Proc. 3.850 (2005 Supp. Pamphlet) (excepting from the general time bar any claim based on newly discovered evidence, newly recognized rights, or neglect of counsel); Ill. Comp. Stat. Ann., ch. 725, § 5/122–1(c) (West Supp. 2004) (allowing for late filings when petitioner can show that delay was not due to negligence and excepting entirely from the limitations period any "claim of actual innocence"); Iowa Code § 822.3 (2003) (exception for any "ground of fact or law that could not have been raised within the applicable time period"); Okla. Stat. Ann., Tit. 22, §§ 1089(D)(4)–(8) (West Supp. 2005) (requiring the reviewing court to examine each claim and permitting late filing if any included claim could not have previously been presented on account of legal or factual unavailability). For all applications originating in such States, federal district courts must now engage in the very "verbal gymnastics" that *Artuz* condemned. See 531 U. S., at 10.

The Court's interpretation of "properly filed" in this context conflicts with the meaning we gave the phrase in *Artuz.* Indeed, the Court's rule suggests that the phrase "properly filed" takes on a different meaning when applied to time bars than it does in the context of procedural bars. This Court

has generally declined to adopt rules that would give the same statutory provision different meanings in different contexts, see, *e. g., Clark* v. *Martinez,* 543 U. S. 371, 386 (2005), and I would decline to do so here.

It would be much wiser simply to apply *Artuz's* rule to state time bars that, like the PCRA, operate like a procedural bar. In this case, the PCRA time bar's enumerated exceptions, which require state courts to review the claims elucidated in postconviction petitions and to determine whether particular claims trigger the applicability of the exceptions, plainly function like a procedural bar. Thus, I would hold that Pace's petition was "properly filed"—it was "delivered to, and accepted by, the appropriate court officer for placement into the official record" and complied with the "applicable laws and rules governing filings." *Artuz,* 531 U. S., at 8.

Application of the *Artuz* rule in this context is clearly consonant with the statutory text.[5] A time bar is nothing more than a species of the larger category of procedural bars that may preclude consideration of the merits of the state petition, and may raise questions that are equally difficult to decide. Indeed, under Federal Rule of Civil Procedure 8, the contention that a claim is untimely is an affirmative defense that can be waived. Because most state laws respecting untimely filings of postconviction petitions function in a manner identical to the procedural bar at issue in *Artuz,* there is no justification for giving special treatment to any state rule based on untimeliness.

---

[5] The majority claims that this interpretation of "properly filed" is inconsistent with the text of § 2244(d)(2). See *ante,* at 416. But the rule I favor relies on the same interpretation, of the same statutory text, that we adopted in *Artuz.* See 531 U. S., at 10. Unless the Court means implicitly to overrule *Artuz,* its rule compels the conclusion that the singular phrase "properly filed" takes on different meanings in different contexts. That is the same interpretive exercise we unequivocally rejected in *Clark* v. *Martinez,* 543 U. S. 371, 386 (2005).

## IV

A rule treating statutes of limitations equivalently to procedural bars would accomplish the statutory purposes Congress sought to vindicate in AEDPA. Congress fashioned 28 U. S. C. § 2244(d)(2) in order to provide a strong "incentive for individuals to seek relief from the state courts before filing federal habeas petitions." *Duncan* v. *Walker,* 533 U. S. 167, 180 (2001). As we explained in *Duncan:*

> "The tolling provision of § 2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period. Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to 'properly filed application[s] . . . .' " *Id.,* at 179–180.

In construing the words "properly filed," therefore, we must consider not only the "potential for delay in the adjudication of federal law claims," but also the need to avoid overburdening district courts by encouraging "the very piecemeal litigation that the exhaustion requirement is designed to reduce." *Id.,* at 180. AEDPA, after all, was designed to "streamline and simplify" the federal habeas system in order to reduce the "interminable delays" and "shameful overloading" that had resulted from "various aspects of this Court's habeas corpus jurisprudence." *Hohn* v. *United States,* 524 U. S. 236, 264–265 (1998) (SCALIA, J., dissenting). The Court's rule is unfaithful to these legislative goals.

The Court's principal justification for its rule is the fear that allowing statutory tolling in this context would allow prisoners to extend the federal statute of limitations indefinitely by repeatedly filing meritless state petitions. See *ante,* at 413 ("[A] state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction

petitions"). That fear is misguided for two reasons. First, it ignores a basic fact that we have recognized repeatedly— a "prisoner's principal interest, of course, is in obtaining speedy federal relief on his claims." *Rose* v. *Lundy*, 455 U. S. 509, 520 (1982) (plurality opinion). Indeed, it is an understatement to say that the vast majority of federal prisoners "have no incentive to delay adjudication of their claims," *Duncan*, 533 U. S., at 191 (BREYER, J., dissenting). Most prisoners have precisely the opposite incentive because delaying the initiation of federal postconviction relief will almost assuredly maximize their periods of incarceration.

Second, the Court's concern is premised on the incorrect assumption that the phrase "properly filed" has no meaningful content unless all untimely petitions are by definition improper. The reason that assumption is wrong is because any claim that a state application has tolled the limitations period will always depend on the district court's finding that the petition was "properly filed." In my view, it would be entirely appropriate, and consistent with the text and purposes of AEDPA, to define "properly filed" as excluding any filings deemed by the district court to be repetitious or abusive. If an application for postconviction review is not filed in good faith—filed, in other words, explicitly to prolong the federal statute of limitations—it would be improper under AEDPA, and statutory tolling would not be appropriate. Federal and state courts have considerable experience identifying and preventing the kind of dilatory pleadings that concern the Court today. See, *e. g., McCleskey* v. *Zant*, 499 U. S. 467, 479–489 (1991). There is no reason that courts could not engage in similar analyses to prevent state prisoners from prolonging indefinitely the AEDPA statute of limitations.[6]

---

[6] Such an inquiry is consistent with *Artuz*, which distinguished between properly filed applications and individual claims contained within those applications. An application filed intentionally to prolong the federal statute of limitations would be improper in its entirety. Indeed, it is difficult to imagine how one particular claim in an application could be im-

Unfortunately, the most likely consequence of the Court's new rule will be to increase, not reduce, delays in the federal system. The inevitable result of today's decision will be a flood of protective filings in the federal district courts. As the history of this case demonstrates, litigants, especially those proceeding *pro se,* cannot predict accurately whether a state court will find their application timely filed. Because a state court's timeliness ruling cannot be predicted with certainty, prisoners who would otherwise run the risk of having the federal statute of limitations expire while they are exhausting their state remedies will have no choice but to file premature federal petitions accompanied by a request to stay federal proceedings pending the exhaustion of their state remedies. Cf. *Rhines* v. *Weber, ante,* at 278. The Court admits that this type of protective filing will result from its holding. See *ante,* at 416. I fail to see any merit in a rule that knowingly and unnecessarily "add[s] to the burdens on the district courts in a way that simple tolling . . . would not." *Duncan,* 533 U. S., at 192 (BREYER, J., dissenting).

Beyond increasing the burdens faced by district courts, the Court's tacit encouragement of countless new protective filings will diminish the "statutory incentives to proceed first in state court" and thereby "increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce." *Id.,* at 180. Congress enacted § 2244(d)(2), along with § 2254(b), to "encourage litigants *first* to exhaust all state remedies and *then* to file their federal habeas petitions as soon as possible." *Id.,* at 181. The Court's rule turns that statutory goal on its head—in essence, encouraging all petitioners who have doubts regarding the timeliness of their state petitions to file simultaneously for relief in federal and state court. *Artuz* appropriately prevented such a result with respect to proce-

---

properly motivated to delay federal proceedings, while another claim was "properly filed" under AEDPA.

dural bars. Because I see no reason to depart from that sound approach, I would hold that Pace's application was "properly filed" under AEDPA. I respectfully dissent.