**Pedro DIAZ, Petitioner,**

v.

**James T. CONWAY, Superintendent of Attica Correctional Facility, Respondent.**

**No. 06 Civ. 1407(VM).**

United States District Court, S.D. New York.

July 26, 2007.

Pedro Diaz, Attica, NY, pro se.

Christopher John Blira–Koessler, Offc. of Bronx Co. D.A., Bronx, NY, for Respondent.

### DECISION AND ORDER

MARRERO, District Judge.

Petitioner Pedro Diaz ("Diaz") filed a petition seeking a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (1996). Diaz challenges his conviction in the New York State Supreme Court, Bronx County (the "trial court") on several counts relating to an incident of violent sexual assault. For the reasons discussed below, Diaz's petition is DENIED.

## I. BACKGROUND [1]

### A. THE UNDERLYING CONVICTION

Following a jury trial, judgment was rendered on February 16, 1988, in the trial court, convicting Diaz of: attempted murder in the second degree; rape in the first degree; sodomy in the first degree; robbery in the first degree; assault in the first degree; unlawful imprisonment in the first degree; and endangering the welfare of a child.[2] Diaz was sentenced as a second violent felony offender to consecutive terms of 12 1/2 years for each of the attempted murder, rape, and sodomy charges, to run concurrently with sentences of 10 to 20 years for the robbery charge, 7 1/2 to 15 years for the assault charge, 2 to 4 years for the unlawful imprisonment charge, and 1 year for the child endangerment charge.

The conviction related to events which occurred on October 25, 1986, immediately following a party hosted by the Aviles family in their apartment in the Bronx, New York. Attending the party were Diaz, the victim Miriam V. ("Miriam"), and her two children, 9–year–old Josephine Paris ("Josephine") and the infant Jose. When Miriam left the party with her children at about 1:00 AM, Diaz and another man, alleged to have been the deejay at the party, offered to help her carry her infant's carriage down the stairs to her own apartment. As Miriam opened the door to the apartment, Diaz pushed his way inside and locked the door behind him. He grabbed a kitchen knife and ordered Miriam to give him the jewelry she was

---

1. The factual summary below derives primarily from the following documents: Diaz's Habeas Corpus Petition, filed January 11, 2006 (the "Petition"), the Motion to Dismiss of Respondent James T. Conway, dated March 15, 2007 ("Resp't Mot.") and exhibits attached thereto, the Affidavit of Christopher J. Blira–Koessler, dated March 15, 2007, and Petitioner's Reply Memorandum of Law and Reply Affidavit, dated May 4, 2007. Except where specifically referenced, no further citation to these sources will be made.

2. *See,* respectively, New York Penal Law §§ 110/125.25(1), 130.35(1), 130.50(1), 160.15(3), 120.10(1), 135.10, and 250.10.

wearing. He then shoved Miriam and her daughter into the bedroom, and forced Josephine into the closet by threatening to kill her mother if she did not comply. Still holding the knife, Diaz ordered Miriam to undress; he then raped and sodomized her.

Afterwards, Diaz brought Miriam into the living room, where he twice cut her neck with the knife and covered her nose and mouth with his hand, suffocating her. When Josephine, who was still in the bedroom closet, called out for her mother, Diaz left Miriam in the living room and proceeded into the bedroom, where he dressed himself, threw a toy at Josephine, and "smacked [the infant Jose] three times." While Diaz was distracted, Miriam fled her apartment and ran, naked and bleeding from the neck, upstairs to the Aviles' apartment where she banged on the door and yelled for help. Luis Aviles, his brother Juan, and several guests who had not yet left the party ran downstairs to Miriam's apartment, where they found Diaz holding the knife to Josephine's neck and threatening the gathering crowd to back away. The Aviles brothers leaped at Diaz and disarmed him, but in so doing, they knocked over the baby carriage. Luis picked up the infant and handed him to a woman standing in the hallway outside the apartment. By the time he returned, Diaz had fled.

Miriam was taken to the hospital, where she was treated for the injuries to her neck. The hospital staff administered pelvic and rectal examinations, and preserved blood and semen samples taken from her body in a Vitullo rape kit. However, the technological limitations of the late 1980s prevented investigators from being able to extract useful DNA information from the available samples; accordingly, the samples could not be used to identify the assailant.

Despite having been positively identified by multiple eyewitnesses, including the victim and her daughter, Diaz argued at trial that he had been asleep at his parents' house when the attack occurred, and that the witnesses were mistaken as to his identity.

### B. POST–CONVICTION PROCEEDINGS

#### 1. First and Second Motions to Vacate

On December 14, 1988, Diaz moved in the trial court to vacate his judgment of conviction under New York Criminal Procedure Law ("NYCPL") § 330.30(1)(2). He also moved, on January 20, 1989, to vacate the judgment pursuant to NYCPL § 330.30(3) based on his discovery of the identity of the deejay, Johnny Perez ("Perez"), who with the perpetrator had helped Miriam carry the baby carriage down the stairs of the apartment complex immediately before the attack more than two years prior. When asked to identify the perpetrator out of an array of eighteen photographs, Perez did not select the photograph of Diaz. Because Diaz's § 330.30(1)(2) motion "added no new fact or law" that was not raised in trial proceedings, and because the deejay's testimony was of "limited, if any, probative value" in light of the "overwhelming evidence of guilt adduced at trial," the trial court denied both motions in their entirety. *People v. Diaz*, Index No. 5870/86 (Wittner, J., Feb. 16, 1989).

#### 2. Direct Appeal

Diaz appealed his conviction to the New York Supreme Court Appellate Division, First Department ("the Appellate Division") raising the following claims: (1) the existence of a witness who could testify that appellant was not the perpetrator required a new trial or, at the least, a hearing to determine whether the witness

could have been found at an earlier time and whether the witness's testimony could have changed the verdict; (2) there was insufficient evidence to establish that the minor injuries inflicted on the complainant constituted an attempt to murder her; and (3) the court's charge violated Diaz's right to a fair trial and due process in that it failed to inform the jury, even indirectly, that it should take into consideration possible influence by the Aviles family on Miriam's identification of the defendant.

On March 26, 1992, the Appellate Division unanimously affirmed Diaz's conviction, and on May 15, 1992, the New York Court of Appeals denied Diaz's application for leave to appeal. *See People v. Diaz,* 181 A.D.2d 616, 581 N.Y.S.2d 997 (1st Dep't 1992), *lv. denied,* 79 N.Y.2d 1048, 584 N.Y.S.2d 1015, 596 N.E.2d 413 (1992).

### 3. *Third Motion to Vacate*

On November 7, 2002, more than ten years after the denial of his appeal and eight years after NYCPL § 440.30(1–a) ("§ 440.30") had taken effect, Diaz moved, pro se, pursuant to that statute to vacate his judgment of conviction. He asserted that the results of a DNA analysis of the samples in the rape kit would have exonerated him, had those results been available at trial. Despite diligent efforts, however, the samples could not be located, and some evidence suggested that the rape kit connected to this case, alongside many other rape kits, had been destroyed in the mid 1990s according to then applicable procedures. (*See* Affirmation of Cristina S.W. Park ¶ 6, attached as Ex. 9 to Resp't Mot.). In light of the missing but potentially exonerating evidence, Diaz's motion was denied with leave to renew, and an attorney was assigned to assist Diaz in his subsequent motion. *See People v. Diaz,* Indictment No. 5870–86 (Price, J.S.C., May 19, 2003).

### 4. *Fourth Motion to Vacate*

Through his assigned counsel, Diaz on May 22, 2004 moved pursuant to NYCPL § 440.10(1)(c) and (h) to vacate the judgment and dismiss the indictment as a sanction for the New York Police Department's failure to preserve potentially exonerating evidence. Holding that "the People were under no obligation to preserve the evidence after [Diaz's] direct appeals were exhausted in 1990," the trial court denied the motion. *People v. Diaz,* Indictment No. 5870–86 (Price, J.S.C., Sept. 29, 2004), *lv. denied* (Marlow, J., Jan 20, 2005).

Proceeding pro se, Diaz moved on March 11, 2005 to reargue the Appellate Division's denial of his leave to appeal the denial of his § 440.10 motion. Finding that there had been "no question of law or fact ... misapprehended or overlooked," the Appellate Division denied Diaz's motion, and the Court of Appeals denied leave to appeal. *People v. Diaz,* Indictment No. 5870–86 (Marlow, J., August 25, 2005), *lv. denied* (Smith, J., December 2, 2005).

### 5. *Diaz's Habeas Corpus Petition*

Diaz now seeks, pro se, a writ of habeas corpus alleging the following grounds: (1) new evidence exists in the form of DNA testing pursuant to § 440.30 that was never tested; (2) the state court erroneously placed the burden on Diaz to demonstrate that DNA evidence still exists; (3) the state court accepted, without sworn affidavits, Respondent's assurances that diligent efforts were made to locate the rape kit; and (4) the state court implied that there was a time limit to bring a motion for DNA testing by asserting that Diaz had waited 10 years after his direct appeal to file his § 440.30 motion. On March 22, 2007, Respondent filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), asserting

that Diaz has failed to state a claim upon which relief can be granted because his petition is untimely under 28 U.S.C. § 2244(d).

## II. *DISCUSSION*

### A. *THE PETITION IS UNTIMELY*

The portions of 28 U.S.C. § 2244(d)(1) relevant to this case direct a habeas petitioner to file his or her application within one year of the latter of: "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," or "(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[3] 28 U.S.C. § 2244(d)(1).

### 1. *28 U.S.C. § 2244(d)(1)(A)*

■ The New York Court of Appeals denied Diaz's request for leave to appeal in May of 1992, but AEDPA, under which Diaz now seeks habeas relief, was not enacted until 1996. In 1998, the Second Circuit "conclude[d] that prisoners [incarcerated prior to 1996] should have been accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition...." *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998). AEDPA was enacted on April 24, 1996; thus, in the absence of equitable tolling, Diaz would have had to file his petition on or prior to April 24, 1997 in order to fall within the one-year statutory deadline provided by § 2244(d)(1)(A). Because the petition was not filed until January of 2006, it cannot qualify as timely under § 2244(d)(1)(A).

### 2. *28 U.S.C. § 2244(d)(1)(D)*

■ Section 440.30 provides prisoners with an opportunity to exonerate themselves by requesting a DNA analysis that may have been previously unavailable on stored evidence. While this recourse had been available to prisoners like Diaz since the statute was enacted in 1994, Diaz did not attempt to avail himself of it until 2002. Although Diaz had the right to pursue his § 440.30 motion at any time after his conviction, the "factual predicate of [Diaz's habeas] claim ... could have been discovered through the exercise of due diligence" as early as the date on which § 440.30(1–a) was passed by the New York legislature. 28 U.S.C. § 2244(d)(1)(D). Thus, in order to timely file a habeas petition under this provision of the AEDPA, Diaz "must demonstrate that facts underlying his ... claims were not discoverable through due diligence prior to" April 24, 1996, the effective date of the AEDPA. *Shuler v. Spitzer,* 2007 WL 1704644, *5 (E.D.N.Y.2007). Since Diaz has made no assertion that the DNA tests he demanded in 2002 could not have been requested prior to the April 24, 1997 deadline, he has not demonstrated his petition is timely filed pursuant to § 2244(d)(1)(D).

### 3. *Petitioner is Not Entitled to Tolling*

■ The time limits prescribed by § 2244(d)(1) may be tolled while "a prop-

---

**3.** Diaz asserts in his reply brief that "he has timely filed his habeas application within the limitation period pursuant to Title 28 U.S.C. § 2244(d)(1)(B)." (Diaz's Reply 12). This provision allows a habeas petitioner to file his petition within one year of "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Diaz has not asserted any set of facts to support this claim, and the Court cannot identify any circumstances stated in the facts that might qualify as an unconstitutional state-created impediment to an otherwise timely filing of the habeas petition. Accordingly, 28 U.S.C. § 2244(d)(1)(B) is not relevant to the instant motion.

erly filed application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2). However, the Supreme Court has held that a habeas petitioner seeking to toll the AEDPA statute of limitations must additionally meet "two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The Court is not persuaded that Diaz has satisfied either of these two elements. Diaz allowed more than ten years to pass between the denial of his appeal in 1992 and his motion to vacate the judgment in 2002. There is no indication in the record that during that time Diaz made any attempts to "pursu[e] his rights diligently." *Id.* There is, further, no indication that "some extraordinary circumstance stood in his way" between those years. *Id.* While the disappearance of the rape kit, especially if it had occurred under conditions suggesting impropriety or some other exceptional situation, might be considered an "extraordinary circumstance," it was not one of which Diaz was even aware until long after his conviction, and it certainly did not prevent Diaz from being able to diligently pursue post-conviction relief in the state courts. In fact, had Diaz acted diligently by requesting DNA testing when that recourse to review a conviction became available in 1994, he may have actually been able to locate the rape kit and avoid the problems he faced in his subsequent motions to vacate the judgment. Diaz is therefore not entitled to tolling, and his petition must be denied as untimely.

### III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that the motion of respondent James Conway to dismiss the petition of petitioner Pedro Diaz ("Diaz") for a writ of habeas corpus is GRANTED, and it is further

**ORDERED** that the application of Diaz for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Diaz has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**