NOT DESIGNATED FOR PUBLICATION

No. 119,105

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KELVIN H. TURNER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL and BRUCE C. BROWN, judges. Opinion filed May 31, 2019. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

LEBEN, J.: Kelvin Turner appeals the district court's denial of his motion to withdraw his guilty plea. But Turner filed the motion after a statutorily established deadline, so he had to show excusable neglect for not having filed the motion earlier. The district court properly determined that Turner didn't make that showing when he merely said that he hadn't known he could seek to withdraw the plea until after the time deadline had expired.

Turner also appeals the district court's decision to revoke his probation and send him to prison rather than giving him another chance on probation. Ordinarily, after a

court grants probation in a felony case, the court must use intermediate sanctions (like short stays in jail) before ending the probation and imposing the prison sentence. But there's an exception to that general rule when the court finds that "the welfare of the offender will not be served" by intermediate sanctions and a return to probation. See K.S.A. 2018 Supp. 22-3716(c)(9)(A). The district court made that finding here, and Turner hasn't shown that the district court erred by doing so.

FACTUAL AND PROCEDURAL BACKGROUND

Turner pleaded guilty to one felony count of possession of methamphetamine as part of a plea agreement with the State. Turner's past criminal convictions gave him a criminal-history score of A, which meant that his presumptive sentence on the new conviction would be prison, not probation. As part of the plea agreement, though, the State agreed not to oppose Turner's motion for a dispositional-departure sentence to probation. The State also agreed to dismiss three other charges (distribution of a controlled substance, driving with a suspended or canceled license, and failing to signal).

The district court accepted Turner's guilty plea at a standard hearing designed to make sure defendants understand the rights they are giving up by entering the plea and are making the plea voluntarily. Before the hearing, Turner signed a written statement that he knew of no reason to question his mental competence and that he hadn't taken any drugs within the past 48 hours except for OxyContin and Oxycodone for pain. He said on the written document that these drugs didn't affect his ability to understand what he was doing.

At the hearing, the court asked Turner whether he had consumed any alcohol, medicine, or other drugs within the past 24 hours "to the extent that your ability to understand your rights and make decisions would be affected." Turner said, "No, sir." Turner also told the court that he was satisfied with the way his attorney had represented

2

him. After this discussion, which also included the court explaining the rights Turner would be giving up by entering the plea (like a right to a jury trial), the court accepted Turner's guilty plea and the State dismissed the other charges.

As planned in the plea agreement, Turner filed a motion asking the court to give him probation rather than his presumptive prison sentence. As it had agreed to do, the State offered no objection, and the court granted the motion. Among the points cited by the court in support of that decision were the availability of drug-treatment programs and Turner's willingness to participate in drug-and-alcohol-treatment programs. The court sentenced Turner to a 12-month term on probation with an underlying 40-month prison sentence that would be served if Turner didn't successfully complete his probation.

Turner quickly ran into problems on probation. The court found that Turner violated probation requirements four separate times:

- In January 2017 (after his November 2016 sentencing), Turner tested positive for methamphetamine. He agreed in early February to serve a three-day jail sanction.
- In late February, Turner again tested positive for methamphetamine. He agreed in March to serve another three-day jail sanction.
- In May 2017, Turner again tested positive for methamphetamine. In June, he admitted to that violation and to failing to make regular payments on his court-cost obligations. This time, the court ordered that Turner serve 30 days in the county jail and extended the probation for another 12 months. The court also required that Turner complete an inpatient drug-and-alcohol treatment program.
- In July 2017, Turner left the treatment program and didn't report to his probation supervisor. With Turner's location unknown, the court issued a warrant for Turner's arrest, but he wasn't arrested until December. Turner admitted that he had "self-discharged from inpatient treatment" and that his location after leaving treatment had been unknown to his probation supervisor, both violations of his probation.

At the hearing on this fourth probation violation, the State asked that Turner's probation be revoked and that he be sent to serve his prison sentence. Turner's attorney told the court that Turner wanted the court to do that, but Turner then said "[i]t's whatever the Court decides" and he would "just [as] soon go back home." The court found that Turner was "not amenable to probation," noting that "he's had several probation violations within the past year and is not willing to go into inpatient treatment." The court revoked Turner's probation and imposed the prison sentence. In its written order, the court cited the offender-welfare provision in K.S.A. 2018 Supp. 22-3716(c)(9), concluding that Turner's "acts of leaving treatment and failing to report indicate he is not amenable to probation or likely to benefit from reinstatement" of probation.

Shortly after Turner's December 2017 arrest on the probation-violation charge, he moved to withdraw his guilty plea. He said that he had been under the influence of narcotics and that his attorney—who hadn't done a good job—coerced him to accept the plea. He said that his attorney had lied to him and told him that two codefendants had been ready to testify against him at trial. Instead, Turner said, the attorney simply wasn't ready for trial and coerced Turner into making an unwise guilty plea.

The State responded that because Turner's motion had been filed more than one year after his conviction, he had to show excusable neglect for the late filing. Turner's motion didn't make that claim, but in a hearing he said that he wasn't aware that he could move to withdraw his plea until after the court had revoked his probation and imposed the prison sentence. At that point, he said, someone in custody with him had mentioned the possibility to him. Both Turner and the attorney who had represented Turner through his plea and sentencing, Richard Paugh, testified.

In explaining why he hadn't filed to withdraw his plea sooner, Turner said that he wasn't aware that was even a possibility until after his December arrest, when "somebody

4

in a pod [at the jail] mention[ed] something about a law that said we—we could appeal our plea agreement." He also said he wasn't aware of the one-year time limit on filing such a motion.

On the merits of his motion, Turner said that his mental abilities had been impaired when he entered his plea and from sentencing until the time he moved to withdraw the plea. He said he had been on Xanax, Oxycodone, OxyContin, and methamphetamine when he made the plea.

Paugh said that he discussed the plea terms with Turner, went over a written document explaining Turner's rights, and answered Turner's questions. He also said he wouldn't have proceeded with the plea hearing if he would have thought Turner wasn't able to understand what he was doing. He said that Turner never expressed regret about the plea agreement and that Turner had thanked Paugh—saying that Paugh had saved Turner's life—after sentencing.

The district court noted that Turner didn't seek to set aside his plea until he had been arrested and faced the likelihood of going to prison. The court also concluded that there was no credible evidence that Turner was mentally impaired when he entered the plea. The court found that Turner hadn't shown excusable neglect for the delay in filing his motion and rejected the motion because it was beyond the statutory time limit.

Turner then appealed to our court.

ANALYSIS

We begin with Turner's motion to withdraw his guilty plea, which the district court denied as untimely. Turner's sentencing took place and appellate jurisdiction ended 14 days later when Turner didn't appeal. See K.S.A. 2018 Supp. 22-3608(c); *Wilkerson v. State*, 38 Kan. App. 2d 732, 734, 171 P.3d 671 (2007). So the one-year deadline to file a motion to withdraw a plea began to run on November 18, 2016. Turner filed his motion on December 28, 2017, past that deadline.

To get court consideration of a motion to withdraw plea filed beyond that deadline, the defendant must show excusable neglect. See K.S.A. 2018 Supp. 22-3210(e)(2). But mere ignorance of the law—here, the one-year time deadline—can't support a finding of excusable neglect. See *State v. Davisson*, 303 Kan. 1062, 1069-70, 370 P.3d 423 (2016). That's really all that Turner can point to in this appeal. While he also told the district court that he was impaired for much of the one-year period, the district court didn't find Turner's testimony credible. We find no support for an excusable-neglect claim here.

Turner makes one other argument in trying to get his untimely motion considered—that the one-year time deadline should be equitably tolled. It's true that the United States Supreme Court has applied equitable tolling in some circumstances. In *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 [2005]), the Court applied equitable tolling when the defendant showed that he had been "'pursuing his rights diligently'" and "'some extraordinary circumstance stood in his way'" and prevented timely filing. Generally, then, equitable tolling requires some extraordinary circumstance that prevents one from complying with a deadline despite reasonable diligence in trying to do so. See Black's Law Dictionary 656 (10th ed. 2014).

But here, Turner hasn't shown either that he was diligently pursuing his rights or that something prevented him from filing his motion sooner. Even if Turner didn't know about the one-year deadline, he had several probation-violation proceedings before he expressed any dissatisfaction with the plea. Turner hasn't pointed to *any* diligent action he had taken to pursue the plea withdrawal before filing his motion in late December 2017. Nor has he shown that anything outside his own control prevented him from doing so. We find no error in the district court's conclusion that the motion to withdraw Turner's guilty plea could not be considered since he didn't show excusable neglect.

We turn next to the district court's decision to revoke Turner's probation and impose his underlying prison sentence.

Traditionally, district courts in Kansas have had broad authority to revoke probation on any significant violation. A 2013 statutory change limited that discretion and required that intermediate sanctions generally be used before the court may invoke probation and impose the prison sentence. But the State argues that the offender-welfare exception allowed the court to bypass more intermediate sanctions and impose Turner's prison term.

The offender-welfare exception lets the court impose the prison sentence if "[t]he court finds and sets forth with particularity the reasons for finding . . . that the welfare of the offender will not be served by such [intermediate] sanction." K.S.A. 2018 Supp. 22-3716(c)(9)(A). The district court here said from the bench that Turner was "not amenable to probation" based on his "several probation violations within the past year" and his unwillingness to go through with the inpatient treatment that had been ordered. In its written order, the court cited the offender-welfare provision, adding that Turner wasn't likely to benefit from more time on probation.

In this appeal, Turner hasn't challenged the adequacy of the district court's findings in invoking the offender-welfare provision. Instead, Turner has argued that the district court invoked a different exception that applies when a defendant has absconded. Turner argues that the district court essentially found Turner had absconded when he left the treatment program without letting his probation supervisor know where he was going. Turner then makes an argument that his situation doesn't technically meet the legal definition for absconding.

But the district court didn't cite the absconder exception, and the court had sufficient authority to revoke Turner's probation and impose his sentence under the offender-welfare exception. (The court also would have had authority to do so because Turner had received a dispositional-departure sentence. See K.S.A. 2018 Supp. 22-3716[c][9][B]; *State v. Stuart*, No. 118,818, 2018 WL 6424250, at *2 [Kan. App. 2018] [unpublished opinion].) We find no error in the district court's imposition of Turner's prison sentence here.

The district court's judgment is affirmed.