**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 22, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EVERPLAY INSTALLATION INC.,
and ROLF HUBER,

Plaintiffs-Appellants,

v.

ROGER JOSEPH GUINDON,

Defendant-Appellee.

No. 11-1253
(D.C. No. 1:08-CV-00824-PAB-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

Everplay Installation, Inc. (Everplay) and Rolf Huber filed an action

against Roger Joseph Guindon in district court in April 2008.  Plaintiffs sought to

enforce a 2003 arbitration award and various orders and judgments stemming

from the arbitration proceedings that were entered by courts in Ontario, Canada,

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

between July 10, 1998, and November 22, 2007. Plaintiffs petitioned for enforcement of the arbitration award under the 1958 Convention on the Recognition and Enforcement of Arbitral Awards, codified in Chapter 2 of the Federal Arbitration Act. *See* June 10, 1958, 21 U.S.T. 2517 (1970); 9 U.S.C. §§ 201-08. They also sought to enforce the various Canadian court orders and judgments as a matter of comity and under the Colorado Uniform Foreign Money-Judgments Recognition Act (Recognition Act), Colo. Rev. Stat. §§ 13-62-101 to 13-62-109 (2007). Guindon contended that Plaintiffs' claims were barred by the applicable statutes of limitations. In response, Plaintiffs maintained that the statutes should be equitably tolled based on Guindon's wrongful conduct.

Following a bench trial, the district court ruled that Plaintiffs did not bring their claims with respect to any of the pre-2007 orders within the applicable limitations periods and failed to show entitlement to equitable tolling. The court also ruled on due process grounds that the 2007 order was unenforceable against Guindon. Plaintiffs appeal from the district court's judgment in favor of Guindon. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm for substantially the same reasons articulated by the district court in its oral ruling on May 25, 2011.

-2-

## District Court's Findings of Fact

Huber, Guindon, and a third party incorporated Everplay in 1993. The articles of incorporation included an arbitration agreement. A dispute arose and Plaintiffs invoked the arbitration provision in 1998. The arbitrator issued an interim award in 1998 precluding Guindon from competing with Plaintiffs during the pendency of the arbitration. In 2003, the arbitrator issued an award in favor of Plaintiffs, requiring Guindon to pay Plaintiffs' costs and attorneys' fees, but not awarding damages. An Ontario court entered an order enforcing the 2003 arbitration award in 2007. During the pendency of the arbitration proceedings, Plaintiffs obtained several other court orders against Guindon, awarding them additional costs and attorneys' fees.

Guindon declared bankruptcy in the fall of 1998. Plaintiffs filed a proof of claim in the bankruptcy estate for $21,066.30, representing the fee and cost awards entered by the Ontario court in July and August 1998. Plaintiffs also claimed that Guindon's transfer of his home to his wife in 1997 was a fraudulent conveyance. In connection with that claim, Guindon's wife ultimately deposited one half of the proceeds of the sale of the home into the court registry.

After filing for bankruptcy, Guindon unsuccessfully sought employment in Canada for several years. In early 2000, he took a job for approximately nine months in the Dominican Republic. On August 23, 2000, Guindon faxed a letter to his counsel in the fraudulent conveyance action, indicating that he could be

reached at an address on Strathmore Crescent in Pickering, Ontario, but that he would soon be leaving Canada to work in Colorado. He stated to his counsel, "I no longer reside here and I am telling [my wife] not to accept anything on my behalf. . . . Maybe we should do the same with you, or is this advisable?" Aplt. App., Vol. II at 516 (quotations omitted). Guindon told his attorney "he did not want [Plaintiffs] to know where he was working and for what company because they had previously distributed a copy of the injunction at a trade show and they may very well try [to] do that with my new employer." *Id.* at 516-17 (quotations omitted). He provided no forwarding address to Plaintiffs, the Ontario courts, or the arbitrator.

Guindon's wife continued to reside at the Strathmore Crescent address, during which time she refused to accept service for him. The district court found not credible her testimony that she did so because she had no address for Guindon to which she could send the papers. To the contrary, the court concluded that her conduct was consistent with Guindon's instruction that she not accept service of process. The district court found that, as of August 2000, Guindon and his wife were actively avoiding service of process upon him at the Strathmore Crescent address.

Notwithstanding Guindon's representation to his counsel in August 2000 that he would soon be moving to Colorado, the parties stipulated that he did not actually move to Colorado until May 2001. On May 30, 2001, Guindon's

attorney moved to withdraw as his counsel in the fraudulent conveyance action. Counsel's motion attached a copy of Guindon's August 23, 2000, letter. The district court found that Plaintiffs received service of the motion to withdraw and thus became aware at that time of Guindon's stated plan to relocate to Colorado.[1] Despite that knowledge, Plaintiffs continued to try serve him with documents related to the arbitration proceedings at the Strathmore Crescent address. Plaintiffs' mailings to that address were returned to them with notations that Guindon had moved.

After he relocated to Colorado, Guindon initially worked for Southwest Recreational Industries, Inc. (Southwest). Although his job duties did not violate the terms of a non-compete agreement with Plaintiffs, Guindon did not want Plaintiffs to know about his new employer because he remained concerned that he might lose his job if they accused the company of violating the non-compete.

Guindon testified that he had no permanent address in Colorado for over a year, as he traveled extensively for work and otherwise lived at inexpensive motels in Colorado. Guindon's expert witness, a private investigator hired to illustrate the ease with which Guindon's whereabouts could have been

_____

[1] Guindon also received service of the motion (through unknown means), and he sent a letter to the court on June 20, 2001, stating that he had moved from the Strathmore Crescent address to Colorado. He advised the court he had no permanent address in Colorado, providing only a telephone number at which he could be reached. No evidence indicated that Plaintiffs received Guindon's June 20, 2001, letter before filing their action in 2008.

determined, confirmed that Guindon had a mailing address in Colorado as of April 2002. Guindon also used his real name to enter into leases and purchase property in Colorado, and to obtain a Colorado driver's license and a Social Security number.

As of August 2002, the total amount of Plaintiffs' court orders against Guindon for costs and attorneys' fees was less than the amount of money deposited by Guindon's wife into the court registry.

Guindon was laid off by Southwest in the spring of 2003. At about that time he began using the name J.R. Gilles in his business dealings. He testified, and the court found, that Plaintiffs were aware as early as 2000 that Guindon had used this alias. The district court did not find Guindon's explanation for using this name to be wholly credible. Guindon's wife moved to Colorado in late 2002 or early 2003. She did not provide a forwarding address to the post office. There was no evidence, however, that Guindon's wife used any name other than her own after moving to Colorado.

Huber testified that he thought Guindon was living and working in Canada. He said that his attorney set up an electronic search filter to identify if Guindon's name appeared in any publications. He also claimed he made ongoing inquiries regarding Guindon's whereabouts, but the only example he provided was asking two attendees about Guindon at a trade conference in Florida in 2005 or 2006. Both men told Huber that they did not know where Guindon was, and one of

-6-

them, who lived in Colorado, indicated that Guindon certainly was not in Colorado. The district court noted that, despite Huber's claim he thought Guindon remained in Canada, his inquiries in Florida indicated that Huber may have believed Guindon was in the United States. The court found that, other than these inquiries at the Florida trade conference, Plaintiffs made no effort to locate Guindon in Colorado or anywhere else in the United States. This was despite the fact that Huber observed Guindon at another trade conference in Seattle in late 2006 and learned that there was no record of a Roger Guindon being registered at that conference. The court found that Huber was therefore aware of the possibility that Guindon was using a different name and that he may have relocated to the United States.

In June 2007, Plaintiffs retained a consultant to search for Guindon. That search was limited to Ontario and did not include any known aliases or Guindon's wife's name. The search report stated, "There is a possibility the subject no longer resides in [Canada]." Aplts. App., Vol II at 525 (quotation omitted). Plaintiffs initiated a new court action in Ontario in September 2007, asking the court to confirm the 2003 arbitration award. Despite having reason to believe that Guindon had left Canada as early as 2000 or 2001, Plaintiffs sent notice of this action by mail to Guindon at the Strathmore Crescent address.

Huber testified that he learned from an individual at a training session in Colorado in December 2007 that a Canadian man was doing playground

-7-

resurfacing work in Colorado. When asked if he knew Guindon, the man told

Huber a person he knew as J.R. had recently asked people to start calling him

Roger Guindon. The district court found there was no evidence as to how

Plaintiffs located Guindon after Huber received this information or if the methods

Plaintiffs used were available to them before that time. Plaintiffs filed this action

in April 2008.

Guindon's expert witness testified that he had recently conducted a

nationwide search for Guindon's name in two public records databases that had

been accessible to subscribers for ten years. Within minutes, he was able to find

Guindon's Social Security number, his date of birth, and his Colorado address

history between April 2002 and April 2010. He indicated that he found no

Colorado address for Guindon prior to April 2002. The district court found this

testimony was consistent with Guindon's statements about not having a

permanent address before that time. The searches performed by Guindon's expert

witness cost less than $200.

### District Court's Conclusions of Law

The district court held that 9 U.S.C. § 207 imposes a three-year statute of

limitations on enforcement of foreign arbitral awards. Under the version of the

Recognition Act applicable at the time Plaintiffs filed this action, which did not

specify a period of limitations, the court held that their claims were subject to a

two-year statute of limitations.  *See* Colo. Rev. Stat. § 13-80-102(1)(i).  The same two-year statute applied to Plaintiffs' claims under principles of comity.

The district court found that Plaintiffs had conceded that their claims with respect to the pre-2007 orders were not brought within the applicable limitations periods.  The court therefore considered their arguments in favor of equitable tolling.  It held that equitable tolling could apply to their claims under any of their theories of recovery.  Citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) and *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996) (*en banc*), the court stated that the principles of equitable tolling are similar under federal law and Colorado law.  The court applied the following test from *Pace*: "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  544 U.S. at 418.  It noted further that "[t]olling of the statute of limitations is equitable relief.  Plaintiffs must demonstrate entitlement to that relief based upon their efforts and confront a heavy burden when doing so."  Aplts. App., Vol. II at 535 (quotation omitted).

The district court concluded that Plaintiffs failed to meet their burden to show that they had diligently pursued their rights.  It found that Plaintiffs possessed information that Guindon intended to move to Colorado in the summer of 2001.  Yet Huber provided only one example, in 2005 or 2006, of his efforts to make inquiries as to Guindon's whereabouts.  The court found there was no

-9-

evidence presented regarding the scope and time frame of the search filter set up to identify Guindon's name in publications, nor was there evidence of any search for Guindon on the internet or in public records databases. The court stated: "Plaintiffs['] failure in the 21st century to avail themselves of the simple expedient of conducting a computer search [for] the defendant in the United States, despite having reason to believe that the defendant was in the United States, is not diligence for purposes of claiming equitable tolling." *Id.* at 537. The court concluded further:

> Moreover, plaintiffs have failed to show some "extraordinary circumstance" that stood in the way of their filing their claims within the limitations period. Even if the defendant's conduct between 2000 and 2002 could be described as active deception, plaintiffs have failed to show that there is any impediment that existed after 2002 that frustrated their ability to conduct a database search for the defendant in the United States. As a result, the plaintiffs also failed this prong of the equitable tolling test.

*Id.* at 538.

The district court next addressed the enforceability of the Ontario court order enforcing the 2003 arbitration award. It concluded that Plaintiffs' service of Guindon with a new lawsuit in 2007 at the Strathmore Crescent address was not reasonably calculated to provide him with notice and therefore did not comport with due process. Consequently, the court held that the 2007 order was unenforceable under principles of comity and the Recognition Act. The district court entered judgment in favor of Guindon.

-10-

## Discussion

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Roberts v. Printup*, 595 F.3d 1181, 1186 (10th Cir. 2010) (quotation omitted). We review the district court's determination whether to apply equitable tolling for an abuse of discretion. *See Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1055 (10th Cir. 1995). "An abuse of discretion occurs when the district court's decision is arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment." *United States v. Weidner*, 437 F.3d 1023, 1042 (10th Cir. 2006) (quotation omitted). "[E]quitable tolling is appropriate only in rare and exceptional circumstances." *Sigala v. Bravo*, 656 F.3d 1125, 1128 (10th Cir. 2011) (quotation omitted).

Plaintiffs argue on appeal that the district court applied an incorrect legal standard for equitable tolling in requiring them to show that they diligently searched for Guindon.[2] They maintain that the court should have focused exclusively on Guindon's wrongful conduct in fraudulently concealing his

---

[2]     Plaintiffs advance no argument that the district court erred in determining the applicable statutes of limitations. Nor do they address in their appeal brief the district court's holding that the 2007 order was unenforceable. They have therefore forfeited appellate consideration of these issues. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised . . . in an appellant's opening brief.").

whereabouts through December 2007, when Plaintiffs actually discovered he was living in Colorado.

Plaintiffs' case citations fail to support this proposition. They rely on a district court case holding, without citation to authority, that where a defendant takes positive steps after committing a fraud to keep it concealed, "the focus of inquiry shifts [and] [d]efendant's conduct will toll the limitations period (without any special concern as to plaintiff's due diligence) until such time as plaintiff actually discovers the underlying wrong." *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 472 F. Supp. 402, 406-07 (D. Colo. 1979). In affirming that decision, however, we rejected this proffered alternative standard for equitable tolling, stating:

> [W]e see no reason why an act of concealment by defendant should excuse plaintiff from his obligation of diligence, which he owes the court as well as his adversaries. Of course, if defendant *successfully* conceals the fraud, the concealment would fool the hypothetical diligent plaintiff and toll the statute. But where, as here, the concealment is insufficient to fool a reasonably diligent plaintiff but nevertheless allegedly prevented discovery by Ohio, the second doctrine of fraudulent concealment urged by appellant would simply give it a second arrow to its bow. We hold, therefore, that there is but one federal doctrine of equitable tolling, as set forth in *Holmberg v. Armbrecht*.

*Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 694-95 (10th Cir. 1981).

In *Holmberg v. Armbrecht*, a case which Plaintiffs also cite in their brief, the Supreme Court set forth the standard for equitable tolling as follows:

> [W]here a plaintiff has been injured by fraud and remains in ignorance of it *without any fault or want of diligence or care on his part*, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

327 U.S. 392, 397 (1946) (emphasis added) (quotation omitted). Before and after *Holmberg*, the Court has consistently required a showing of diligence to invoke equitable tolling. *See, e.g., Pace*, 544 U.S. at 418 (listing elements for equitable tolling, including the burden to establish diligence); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Wood v. Carpenter*, 101 U.S. 135, 141 (1879) ("A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it."). This court, too, has applied a diligence requirement. *See Sigala*, 656 F.3d at 1128.

Alternatively, Plaintiffs contend the district court erred in concluding that they did not diligently search for Guindon. Plaintiffs neither acknowledge that the district court's factual findings are subject to clear-error review, nor argue that any of the court's findings are reversible under that standard. Instead, they

-13-

recite only the evidence they contend supports a finding of diligence, ignoring the evidence relied on by the district court. They conclude, "Given the length and degree of deception employed by [Guindon], no amount of diligent searching could have allowed Plaintiffs to pursue enforcing the various awards, judgments and orders entered against [Guindon] in Canada in a more timely manner than occurred here." Aplts. Opening Br. at 32. The district court concluded otherwise, and its decision was not "arbitrary, capricious, or whimsical," nor did it "result[] in a manifestly unreasonable judgment." *Weidner*, 437 F.3d at 1042.

The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

-14-