[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 10-10283

_____

D. C. Docket No. 1:00-cv-00316-IPJ-TMP

WILLIAM ERNEST KUENZEL,

Petitioner-Appellant,

versus

COMMISSIONER , ALABAMA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 17, 2012)

Before DUBINA, Chief Judge, BARKETT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Petitioner William Ernest Kuenzel, a state prisoner, appeals the district court's dismissal of his habeas corpus petition under 28 U.S.C. section 2254. Because Petitioner's claims are procedurally barred under state law and he has made no attempt to demonstrate cause for -- or prejudice from -- his default, Petitioner cannot obtain relief without properly supporting a claim of actual innocence. Petitioner is unable to carry this heavy burden; so we affirm the dismissal of his petition.

BACKGROUND

Petitioner was tried and convicted in Alabama for the capital murder of Linda Offord, a convenience store clerk shot to death during a robbery in 1987. After the penalty phase of trial, the jury unanimously recommended a sentence of death; the trial judge sentenced Petitioner to death.

After the jury verdict and sentencing, Petitioner directly appealed his conviction within the state courts of Alabama. The Alabama courts affirmed Petitioner's conviction and sentence: the Alabama Supreme Court's opinion issued

2

in January 1991, and the Alabama Court of Criminal Appeals issued a certificate of judgment in March 1991.  The United States Supreme Court denied certiorari.

Petitioner then filed a petition for post-conviction relief in the state trial court -- pursuant to Rule 32 of the Alabama Rules of Criminal Procedure -- in October 1993: more than two years after the Alabama Supreme Court had affirmed his conviction and sentence and the certificate of judgment had issued.  This petition was initially denied in October 1994 as time-barred under Alabama Rule of Criminal Procedure 32.2(c).  Then, in May 1996, the state trial court set aside the original October 1994 order and returned the case to the docket.  Later, in February 1999, the state trial court "reinstat[ed]" the original order, denied the petition, and dismissed it with prejudice as untimely filed.  The February 1999 dismissal order was affirmed by the Alabama Court of Criminal Appeals. The Alabama Supreme Court and the United States Supreme Court denied petitions for certiorari in July 2000 and January 2001 respectively.

While Petitioner was litigating his appeals from the state trial court's order denying for untimeliness his petition for state post-conviction relief, he filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Alabama on 7 February 2000.  The district court deemed the petition filed, treated it as a "place-holder" petition, and stayed proceedings

3

pending the outcome of Petitioner's state appeals.  After the stay was lifted and Petitioner had an opportunity to amend his petition, the district court dismissed the petition as time-barred; the district court concluded that Petitioner's untimely state petition for post-conviction relief did not toll the one-year limitation period in 28 U.S.C. section 2254(d).

A series of appeals and remands between this Court and the district court followed as the pertinent law about the timeliness of habeas claims changed.  See, e.g., Kuenzel v. Campbell, 85 Fed. Appx. 726 (11th Cir. 2003) (table); Kuenzel v. Allen, 488 F.3d 1341 (11th Cir. 2007) (per curiam).  On the final remand before this appeal, the district court concluded that the federal habeas petition was untimely (based on Allen v. Siebert, 128 S. Ct. 2 (2007) (per curiam) and Pace v. DiGuglielmo, 125 S. Ct. 1807 (2005)); that Petitioner was due no equitable tolling; and that Petitioner was due no other relief based on his contention of actual innocence.

Petitioner then filed a Rule 60(b) motion alleging the unearthing of new evidence about his innocence.  The district court allowed some discovery and additional briefing in response to the Rule 60(b) motion, but the motion was denied.  The district court did grant Petitioner a certificate of appealability on three issues, which are now before this Court: (1) whether Petitioner's instant

4

habeas petition is time-barred because Petitioner's improperly filed state post-conviction petition did not statutorily toll the limitations period set out in section 2244(d); (2) whether Petitioner is entitled to equitable tolling of the section 2244(d) limitation period based on the manner in which the state trial court decided the timeliness of his state post-conviction petition; (3) whether Petitioner has sufficiently proved his actual innocence about the murder of Linda Offord to avoid the section 2244(d) time bar of his habeas petition.

## STANDARD OF REVIEW

Petitioner's habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996) (codified in scattered sections of Title 28 of the U.S. Code) ("the AEDPA"). We review de novo a district court's dismissal of a section 2254 habeas petition. Rozzelle v. Sec'y, Fla. Dept. of Corr., 672 F.3d 1000, 1009 (11th Cir. 2012) (per curiam).

## DISCUSSION

While we have before us on appeal questions of statutory tolling of the AEDPA, equitable tolling of the AEDPA, and actual innocence, we will address only the actual innocence question because our decision on that question -- as Petitioner himself says -- is the decisive factor for this case.  See, e.g., Rozzelle, 672 F.3d at 1010 (considering "actual innocence" question before addressing availability of remedies premised on existence of "actual innocence"); Arthur v. Allen, 452 F.3d 1234, 1244 (11th Cir. 2006) (same).

Actual innocence is critical to Petitioner's case because even if Petitioner's federal habeas petition is deemed to have been timely filed or otherwise properly filed (for any reason), "[f]ederal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule."  Siebart v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006).  Alabama Rule of Criminal Procedure 32.2(c) is just such an independent and adequate state procedural rule.  See, e.g., Hurth v. Mitchem, 400 F.3d 857, 864 (11th Cir. 2005).  Therefore, Petitioner's only means of obtaining review of the merits of the procedurally-barred constitutional claims

6

in his section 2254 petition, and relief in this case, is to satisfy the "gateway"

established by the Supreme Court in <u>Schlup v. Delo</u>, 115 S. Ct. 851 (1995).[1]


THE <u>SCHLUP</u> GATEWAY


The "<u>Schlup</u> gateway" allows a petitioner sentenced to death to "raise[] a

claim of actual innocence to avoid a procedural bar to the consideration of the

merits of his constitutional claims." <u>Id</u>. at 867.  The "<u>Schlup</u> gateway" is meant to

prevent a constitutional error at trial from causing a "miscarriage of justice" and

"the conviction of one who is actually innocent[.]" <u>Id</u>. at 865.

To meet the proper standard, "the petitioner must show that it is <u>more likely</u>

<u>than not</u> that <u>no reasonable juror</u> would have convicted him in the light of the new

evidence." <u>Id</u>. at 867 (emphasis added).  This showing is more than that showing

required to establish prejudice. <u>Id</u>.  The Supreme Court in <u>Schlup</u> said this about

the needed evidence: "[t]o be credible, such a claim requires petitioner to support

---

[1] In addition to the gateway provided by <u>Schlup</u>, a sufficient demonstration of "cause for the default and prejudice from the asserted error" may support federal habeas relief for claims "forfeited under state law," <u>House v. Bell</u>, 126 S. Ct. 2064, 2076 (2006); but Petitioner presents only an actual innocence claim.  Petitioner raised several claims in his amended federal habeas petition in district court, he raised only procedurally-barred claims here on appeal.  He abandoned the other claims. <u>See</u> <u>United States v. Jernigan</u>, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. at 865.  In reviewing this evidence, courts are not bound by the usual rules of admissibility that would govern at a trial; and guilt is considered "with reference to a reasonable doubt." Id. at 867.  "[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id.

## ACTUAL INNOCENCE

Linda Offord was shot to death at a convenience store in Alabama just after eleven on an evening in November 1987. Petitioner and Harvey Venn, Petitioner's co-worker and roommate, were suspects.  Petitioner was charged with capital murder; Venn pleaded guilty to a lesser charge and testified against Petitioner at trial.

The evidence presented at trial was fully laid out in the district court's detailed orders dismissing this petition with prejudice as time-barred and denying Petitioner's Rule 60(b) motion. Kuenzel v. Allen, No. 00-316-IPJ-TMP (N.D. Ala.

8

Jan. 12, 2011); <u>Kuenzel v. Allen</u>, No. 00-316-IPJ-TMP (N.D. Ala. Dec. 16, 2009). We will summarize the most salient points only.

Briefly stated, Venn testified that he and Petitioner spent the afternoon and evening of the murder together driving around in Venn's car. Venn testified that two shotguns were in the car: a 12-gauge that Venn had borrowed from an acquaintance and a 16-gauge that Petitioner had borrowed from his family. According to Venn, Petitioner brought up the idea of robbing the store for money while they were driving together that night.

Venn testified that the two men parked at the convenience store at about ten in the evening, then left, and later returned at around eleven in the evening when there were fewer people at the store. According to Venn, Petitioner covered the car's license plate, retrieved a shotgun from the back seat of the car, and went into the store to commit the robbery. Venn testified that within a few seconds he heard a shot and saw the victim fall from where she had been sitting. According to Venn, Petitioner returned to the car, the men fled together to Petitioner's house, and Petitioner disposed of the spent shotgun shell in a bin in front of the house used for burning trash.

The state offered additional testimony to corroborate Venn's story. Co-workers of Venn and Petitioner testified that the two suspects were together early

9

in the evening.  Several witnesses testified that they saw Venn's car at the convenience store the night of the murder; some of these witnesses identified Venn at the scene at around ten in the evening and said he was with another man, but they could not identify the man.  April Harris, who knew Venn and Petitioner, testified that she was riding past the store in a car at around ten in the evening, that she could see Venn's car in the parking lot, and that she saw Venn and Petitioner inside the store.

Other testimony indicated that the victim was shot with No. 1 buckshot fired from a 16-gauge shotgun.  No evidence from the crime scene pointed to the use of a particular shotgun in the crime, just that the shotgun used was a 16-gauge and fired No. 1 buckshot.

In a nutshell, Petitioner's theory of defense at trial was that Venn was the one who committed the crime.  Petitioner asserted that he was not with Venn at the time of the shooting; that he did not have his family's 16-gauge shotgun on the night of the murder; and that Venn's testimony was a self-serving attempt to hide his own guilt by framing Petitioner.  To support these contentions, Petitioner offered testimony from his family and a family friend that corroborated Petitioner's version of his location at the time of the murder and the location of the family shotgun. Petitioner stressed that no blood was found on his person and that

the only blood found was a small amount on Venn's pant leg. Petitioner attempted to impeach Venn based on certain false statements Venn had made to police, among other things. Petitioner did not testify during the guilt phase of his trial.

Absent videotape or forensic evidence directly linking Petitioner to the crime, the jury was left to determine and weigh the credibility of the witness testimony. The jury found Petitioner guilty and later recommended (by unanimous vote) death.

Petitioner has now offered several pieces of "new evidence" -- affidavits, declarations, and other material -- that he contends sufficiently establish his actual innocence of the crime in satisfaction of the "Schlup gateway." Petitioner's "new evidence" falls broadly into five categories: (1) "new evidence" that the shotgun Venn had at the time of the murder -- which at trial was thought to be a 12-gauge -- may actually have been a 16-gauge; (2) "new evidence" that Venn was alone with his then-girlfriend for a few minutes an hour or more before the time of the murder; (3) "new evidence" that Venn bore some signs of struggle when interviewed by the police shortly after the murder and that the victim also bore some signs of an altercation; (4) "new evidence" that Venn made statements to the police just after the crime that did not implicate Petitioner, instead mentioning another man who was with Venn near to the time of the murder; (5) "new

11

evidence" that April Harris's testimony before the grand jury about Petitioner's presence at the convenience store was more equivocal than her later trial testimony.

Irrefutable scientific evidence establishing innocence is not required to meet the "Schlup gateway" standard, but "the Schlup standard is demanding and permits review only in the extraordinary case." House, 126 S. Ct. at 2077 (quotations omitted). "Having been convicted by a jury of a capital offense, [a petitioner] no longer has the benefit of the presumption of innocence"; a petitioner comes before the courts instead with "a strong -- and in the vast majority of the cases conclusive -- presumption of guilt." Schlup, 115 S. Ct. at 866 n.42. Even if accepted as both true and "new," Petitioner's "new evidence" does not meet the "Schlup gateway" standard for proving actual innocence: this case does not strike us as truly extraordinary. This view is in line with the position taken by the district court in its orders.

About the first category of "new evidence," Venn's supposed possession of a 16-gauge shotgun does not undermine Venn's story that Petitioner shot Linda Offord: Venn's having a 16-gauge shotgun does not establish that Venn used that gun to murder Offord, does not establish that Petitioner had no 16-gauge shotgun, and also does not establish that Petitioner did not use Venn's supposed 16-gauge

12

shotgun to commit the murder.  With this "new evidence," Petitioner has failed to show that some reasonable jurors -- considering this "new evidence" with the evidence available at trial -- would not still find Petitioner guilty beyond a reasonable doubt.

About the second category of "new evidence," that Venn was alone for a few minutes with his then-girlfriend at close to ten in the evening on the night of the murder does not undermine Venn's story that Petitioner shot Linda Offord:  Venn's presence alone at his then-girlfriend's home some time before the crime -- at about ten o'clock -- does not establish Petitioner's location at the time of the crime -- at about eleven o'clock -- or Venn's location at the time of the crime.  With this "new evidence," Petitioner has failed to show that some reasonable jurors -- considering this "new evidence" with the evidence available at trial -- would not still find Petitioner guilty beyond a reasonable doubt.

About the third category of "new evidence," that Venn bore some signs of struggle when interviewed by police shortly after the murder, and that the victim's body bore some signs of an altercation, would not prevent a reasonable juror from believing Venn's story that Petitioner shot Linda Offord:  Venn bearing some signs of struggle, from some unknown source, some time shortly after the murder and the victim's body bearing some signs of some altercation do little (or nothing)

13

to establish either that Venn murdered Offord or that Petitioner did not murder Offord. With this "new evidence," Petitioner has failed to show that some reasonable jurors -- considering this "new evidence" with the evidence available at trial -- would not still find Petitioner guilty beyond a reasonable doubt.

About the fourth category of "new evidence," that Venn told a story to detectives immediately after the crime -- a story implicating someone other than Petitioner as being with Venn on the night of the murder -- that differed from the one he later told to police and then to the jury at trial would not prevent a reasonable juror from believing Venn's testimony at trial. That Venn changed his story after becoming a cooperating witness does not establish that the first story was true or that his later story was false; that a cooperating witness altered their story between a first police interview and trial would not prevent a reasonable juror from believing the cooperating witnesses's trial testimony. With this "new evidence," Petitioner has failed to show that some reasonable jurors -- considering this "new evidence" with the evidence available at trial -- would not still find Petitioner guilty beyond a reasonable doubt.

The final category of "new evidence" involves April Harris's testimony to the grand jury: identifying Venn's vehicle and stating with some equivocation that she believed in her best judgment that she saw Petitioner and Venn in the store

14

between ten and ten forty-five.  That April Harris's grand jury testimony was not identical to or as certain as her December 1987 witness statement and her unequivocal trial testimony (both stating that she saw Petitioner and Venn in the store between nine thirty and ten), would not prevent a reasonable juror from believing Harris's testimony at trial.  Harris's certainty about her testimony may have evolved between her witness statement, her grand jury testimony, and her trial testimony. But Harris repeatedly identified Petitioner and Venn as being in the store on the night of the murder, and the slight variations in Harris's testimonies would not prevent a reasonable juror from believing Harris's testimony at trial.[2] With this "new evidence," Petitioner has failed to show that some reasonable jurors -- considering this "new evidence" with the evidence available at trial -- would not still find Petitioner guilty beyond a reasonable doubt.

We are not insisting on conclusive exoneration.  While the "new evidence" Petitioner has offered might have strengthened Petitioner's defense if presented at trial, Petitioner has not offered sufficient "new evidence" of the powerful kind that would individually or collectively "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

---

[2] The affidavits of non-experts and other "new evidence" offered to contend that Harris could not have seen that which she testified to having seen also would not prevent a reasonable juror from believing Harris's testimony at trial.

15

Schlup, 115 S. Ct. at 867 (emphasis added).  Taking all the evidence into account, we conclude that some reasonable jurors -- weighing what was available at trial and what has since been presented - would have found Petitioner guilty.[3]


## CONCLUSION


The district court -- not persuaded by Petitioner's new evidence -- found and concluded that Petitioner failed to make the needed demonstration of actual innocence.  We see no reversible error.  Because some reasonable jurors -- weighing what was available at trial and what has since been presented -- would still find Petitioner guilty, Petitioner has not met the "Schlup gateway" standard.  A strong presumption of guilt is present when a case comes to us at this stage.  We are not persuaded that we are faced with a fundamental miscarriage of justice.  Petitioner therefore has not overcome the procedural bar to the review of the merits of his federal habeas petition and cannot obtain habeas relief in this case;

---

[3] In House v. Bell the petitioner submitted powerful evidence that he was not the killer; and the Supreme Court concluded that, with the new evidence, reasonable jurors would have reasonable doubt.  But the Supreme Court still said that case was "close."  126 S. Ct. at 2086. Each case stands on its own facts.  And comparing one case with another requires caution.  But the new evidence here seems to us not so powerful or of central importance to the degree that it was in House.

16

we affirm the dismissal of his petition.

AFFIRMED.