NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2466
_____

DARLENA CLARKSON,
                                                    Appellant

v.

SEPTA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-02510)
District Judge:  Honorable Michael M. Baylson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 20, 2017

Before:  FISHER,[*] HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: June 27, 2017)
_____

OPINION[**]
_____

_____

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

Darlena Clarkson brought this action against her employer, Southeastern Pennsylvania Transportation Authority (SEPTA), asserting claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act (PHRA). She appeals the District Court's orders dismissing her failure to promote claims under Federal Rule of Civil Procedure 12(b)(6) and granting summary judgment in favor of SEPTA on her retaliation claims under Federal Rule of Civil Procedure 56(c). For the reasons stated below, we will affirm.

I.

SEPTA hired Darlena Clarkson as a union employee in 1989. In 2009, SEPTA posted a job opening for Vehicle, Engineering, and Maintenance (VEM) Warranty Administrator—a supervisory, administrative, and managerial position. Clarkson applied seeking a promotion from her previously held positions as a typist and statistical records clerk. Despite her qualifications, SEPTA didn't interview Clarkson, or anyone for that matter, and Clarkson never followed up or asked for an explanation. The position remained unfilled and was relisted in 2012. She reapplied, and this time, was interviewed.

In July 2012, Clarkson spoke with a coworker who led her to believe that SEPTA's 2009 inaction stemmed from a personal conflict with Luther Diggs, the then-Assistant General Manager of Operations. Apparently, Diggs asked Clarkson to help him

2

develop a personal relationship with another SEPTA employee. When Clarkson refused, he placed hiring for the VEM Warranty Administrator position on hold.

In November 2012, SEPTA offered, and Clarkson accepted, the position of VEM Warranty Administrator. In her new role, Clarkson reported primarily to Raelund Dickerson, but also to John Merrigan. Dickerson and Merrigan worked with Clarkson to develop Clarkson's annual goals and objectives. They then directed her to participate in activities and complete tasks consistent with achieving those goals and objectives.

Days after accepting the promotion, on November 18, Clarkson dual-filed the first of two complaints with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations Commission (PHRC). In the initial complaint, Clarkson claimed, among other things, that SEPTA's failure to promote her in 2009 was unlawful retaliation for her refusal to facilitate Diggs' personal endeavor. On March 11, 2013, Clarkson dual-filed a second EEOC/PHRC complaint. In it she alleged that SEPTA employees retaliated against her for filing the initial complaint. Both complaints were dismissed for insufficient evidence of unlawful conduct, and the EEOC thereafter issued Clarkson a right-to-sue letter.

On May 1, 2014, Clarkson brought a gender-based discrimination and retaliation lawsuit against SEPTA alleging violations of Title VII and the PHRA. The District Court granted SEPTA's Rule 12(b)(6) motion to dismiss Clarkson's failure to promote claims.

3

After discovery, the court granted SEPTA's Rule 56(c) motion for summary judgment on all other claims.

Relevant on appeal are Clarkson's failure to promote and unlawful retaliation claims.[1] The District Court dismissed Clarkson's failure to promote claims as untimely and granted summary judgment on her retaliation claims for failure to establish a prima facie case. With respect to her retaliation claims, Clarkson contends that after filing the initial EEOC/PHRC complaint, SEPTA employees improperly assigned her duties outside of the VEM Warranty Administrator job description, made her attend a meeting in an attempt to embarrass her, gave her conflicting directives, threatened her with termination, and subjected her to workplace gossip and disparaging comments.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

We apply plenary review to the District Court's grant of a Rule 12(b)(6) motion to dismiss and to its grant of a Rule 56(c) motion for summary judgment.[2] In so doing, we apply the same standard as the District Court. We will affirm the court's dismissal under

---

[1] The District Court noted, and Clarkson does not now dispute, that she dropped her direct discrimination and retaliatory compensation claims. *See Clarkson v. SEPTA*, No. 14-2510, 2016 WL 1637279, at *1 n.1-2 (E.D. Pa. Apr. 25, 2016). Thus, we do not consider those claims on appeal.

[2] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009) (motion to dismiss); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (summary judgment).

4

Rule 12(b)(6) "if it appears to a certainty that no relief could be granted under any set of facts which could be proved."[3] Additionally, because the court dismissed Clarkson's failure to promote claims as untimely, we will affirm only if her "tardiness . . . [is] apparent from the face of the complaint."[4] We will affirm the court's summary judgment under Rule 56(c) if viewing the "underlying facts and all reasonable inferences therefrom in the light most favorable" to Clarkson, a reasonable factfinder could find only for SEPTA.[5]

## III.

## A.

Before filing suit under Title VII and the PHRA, Clarkson had to timely exhaust each statute's administrative remedies.[6] Under Title VII, a claimant must file an EEOC charge reporting unlawful employment practices within 300 days of the challenged conduct.[7] Under the PHRA, the claimant must file a PHRC complaint within 180 days of the challenged conduct.[8] Promotion decisions are subject to these time limitations and

---

[3] *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).
[4] *W. Penn. Allegheny Health Syst., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010).
[5] *Blunt*, 767 F.3d at 265.
[6] *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 926-27 (3d Cir. 1997).
[7] 42 U.S.C. § 2000e-5(e)(1).
[8] 43 Pa. Stat. and Cons. Stat. Ann. § 959(h).

accrue when the claimant was denied the promotion, not when the claimant discovers the allegedly unlawful basis for the decision.[9]

Clarkson takes issue with SEPTA's failure to promote her to the position of VEM Warranty Administrator in October 2009. But because she did not file her first EEOC/PHRC complaint until November 18, 2012—at least three years after the challenged conduct—her filing is plainly beyond Title VII's and the PHRA's limitation periods. To defeat this clear time-bar, Clarkson argues that because she could not have known of the allegedly unlawful nature of SEPTA's October 2009 inaction until July 2012, we should apply either the discovery rule or equitable tolling. We find neither appropriate.

With respect to the discovery rule, we look to when, through the "exercise of reasonable diligence," the injury would have been "knowable to the plaintiff."[10] And with respect to equitable tolling, the plaintiff must diligently pursue her rights and show "that some extraordinary circumstance stood in [her] way."[11] Clarkson argues that tolling is appropriate because SEPTA never actually denied her application. But Clarkson does not explain why she failed to follow up with SEPTA regarding her application or inquire about the position for more than two years. We are confident that through the exercise of reasonable diligence, Clarkson would have learned that the position was placed on hold

---

[9] *See Noel v. The Boeing Co.*, 622 F.3d 266, 270-71, 275 (3d Cir. 2010).

[10] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d. Cir 1994).

[11] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

and would have discovered any injury within the applicable limitation periods. Moreover, she fails to point to any circumstance, let alone an extraordinary circumstance, that otherwise stood in the way of the timely pursuance of her rights.

Because the tardiness of Clarkson's initial EEOC/PHRC complaint is apparent from the face of the complaint and we decline to toll the statutes of limitation, we will affirm the District Court's Rule 12(b)(6) dismissal of Clarkson's failure to promote claims.

## B.

We now turn to the District Court's grant of summary judgment on Clarkson's remaining retaliation claims.[12] To meet her prima facie burden on these claims, Clarkson must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action."[13]

To satisfy the second prong of her prima facie case, Clarkson must point to an employment action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[14] We examine the

---

[12] We give consistent treatment to retaliation claims brought under Title VII and the PHRA. *See Woodson*, 109 F.3d at 920. For the sake of brevity, we will analyze the claims together.

[13] *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

[14] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

challenged action "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."[15]

We, like the District Court, view the additional tasks and the meeting about an unfamiliar topic as consistent with Clarkson's promotion to a managerial role. That the tasks were not specifically listed in her job description, and that Clarkson was not previously knowledgeable about the topic discussed at the meeting, does not render those actions materially adverse. This is especially true considering that the tasks and the meeting were consistent with Clarkson's annual goals and objectives, that the VEM Warranty Administrator job description imposed on Clarkson the responsibility to "[p]erform other duties as assigned,"[16] and that the voluntary duties were expected of all managerial employees. In the context of a promotion from a union position to a managerial position, the assignment of additional responsibilities, and the expectation that the employee learn about topics necessary to succeed in his or her new position, would not dissuade a reasonable employee from reporting workplace discrimination.

As for the conflicting directives, the record is clear that Dickerson was Clarkson's direct supervisor. Still, she argues that by having to decide whether to follow Dickerson's or Merrigan's directive, the two exposed her to the risk of disciplinary action. Importantly, Clarkson does not claim that she, or any other employee, was ever disciplined for making such a decision. While the supervisory structure could have been

___

[15] *Id.* at 71 (internal quotation marks and citation omitted).
[16] App. 413, VEM Warranty Administrator Description.

clearer, we believe that at most the confusion constitutes a "minor annoyance" that many employees have endured in the workplace.[17] Finally, the sporadic threats of termination, workplace gossip, and disparaging comments, do not rise to the level of a materially adverse employment action. The antiretaliation provisions do "not set forth a general civility code for the American workplace."[18]

Clarkson alternatively seeks to prevail on a retaliation claim premised on a hostile work environment. A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[19] For the same reasons that individually, the challenged actions are not adverse employment actions, we find that together they do not establish a hostile work environment sufficient to support Clarkson's retaliation claims.

Clarkson's failure to meet the second prong of her prima facie case is fatal to her retaliation claims. As such, we will affirm the District Court's summary judgment in favor of SEPTA without reaching the issue of causation.

IV.

For the reasons set forth above, we will affirm the District Court's orders.

---

[17] *See Burlington N.*, 548 U.S. at 68 (Adverse employment actions are not "petty slights or minor annoyances that often take place at work and that all employees experience").

[18] *Id.* (internal quotation marks and citation omitted).

[19] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks and citation omitted).